308 So.2d 270 (1975)
Laura Wallace, wife of August TURNER, and August Turner
v.
Francis BUCHER and Zurich Insurance Company.
No. 54887.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 24, 1975.
*271 Lawrence D. Wiedemann, Wiedemann & Fransen, New Orleans, for plaintiffs-applicants.
Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendant-respondent.
BARHAM, Justice.
The precise question presented for our determination in this suit is whether the father of a six-year-old child is liable for damages which arose when the child struck one of the plaintiffs with his bicycle on a city sidewalk. The activity causing plaintiff's injury would have been sufficiently negligent, imprudent and careless to constitute civil negligence if the child had been a person of discernment. The court of appeal denied recovery. 293 So.2d 535 (La. App. 4th Cir. 1974). We granted certiorari to review that judgment. 295 So.2d 808 (La.1974). We reverse the judgment of the court of appeal.
Laura Wallace Turner, a sixty-two-year-old woman, was walking on a sidewalk in the city of New Orleans when she was struck from the rear and injured by a bicycle ridden by six-year-old Gregory Bucher. In their trial court petition, the plaintiffs alleged the child's independent negligence. It is not disputed that if gauged by the usual standards of conduct, the actions of Gregory Bucher would have constituted negligence on his part. However, plaintiffs conceded that under the jurisprudence, a six-year-old child could not be capable of fault or negligence.
On appeal, plaintiffs urged only the personal negligence of the parents in their supervison of the child as the basis of liability of the father for the injury caused by the child. Before this Court, the plaintiffs have broadened their theory for recovery in writ application, in brief, and in argument; and we must properly resolve the case before us under the applicable law. See La.C.C.P. art. 2164.
*272 The court of appeal found no independent negligence by the father; nor do we. Therefore, we must resolve the issue of his liability under the Civil Code articles relating to paternal responsibility. Article 237 of the Louisiana Civil Code provides:
"Fathers and mothers are answerable for the offenses or quasi-offenses committed by their children, in the cases prescribed under the title: Of Quasi-Contracts, and of Offenses and Quasi-Offences."

Under the title Of Offenses and Quasi-Offenses, Article 2318 provides:
"The father, or [and][1] after his decease, the mother, are responsible for the damage occasioned by their minor [or][2] unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
"The same responsibility attaches to the tutors of minors."
The original source of our Article 2318 was Paragraph 2, Art. 20, Title III, Book III of the Projet du Gouvernement (1800). In Article 20 of the Projet, the drafters placed several paragraphs outlining the various aspects of delictual responsibility for other persons, things, and animals under one's control. When the Code Napoléon was adopted in 1804, it followed the format of the Projet by listing the many facets of delictual responsibility under a single article, Article 1384. However, the French Code did not follow the precise language of the Projet and it departed in substance in some instances.
When we adopted our Code of 1808, we followed the Projet du Gouvernement of 1800 rather than the Code Napoléon. We also utilized the French method of placing many facets of delictual responsibility under one article, our Article 20. Paragraph 2 of that article at pages 320-322, Title 4, § 2, related to paternal liability and it was a literal translation of the source paragraph in the Projet du Gouvernement. It read:
"The father, and after the death of the husband, the mother is responsible for the delinquency [délits] of their minor children."
In the Projet du Gouvernement and in our Code of 1808, the liability of "parents, masters, or principals" was imposed only if they "could have prevented the delinquency [délits] and have failed to do it." (Emphasis here and elsewhere supplied). In the Code Napoléon, only fathers, mothers, tutors and artisans were excused from responsibility if "* * * they were not able to prevent the act which gives rise to such responsibility."
In the Louisiana Projet of 1825, as well as in the Code of 1825, the single long article delineating the liability of persons occupying positions of responsibility for others was broken into several articles. When this was done, a drastic change was made in the conditions for culpability. We then provided in Article 2299 of the Code of 1825 that responsibility of masters, employers, teachers and artisans attached only when they "* * * might have prevented the act which caused the damage, and have not done it." However, very significantly, under Article 2297 the father and the mother were assigned the responsibility for the damage caused by the minor children and were denied any conditions releasing them from their paternal liability.
For the first time in Louisiana, teachers and artisans were permitted an opportunity *273 to escape responsibility for acts of their students and apprentices; and, more importantly for the case at bar, parents were for the first time placed in a position of strict responsibility for the acts of their children. Another very important change occurred in the transition from the 1808 Code to the 1825 Code. In 1808, the parents' responsibility was for the "delinquency" or "delicts" of their minor children. From 1825 through subsequent revisions, the parents were responsible "* * * for the damage occasioned by their minor or unemancipated children". This change in language, though now coinciding with Article 1384 of the Code Napoléon as well as with the Code Civil[3] in effect in France today, is significant in Louisiana for a reason other than this similarity. "Damage," when substituted for "delicts," indicates a possible lack of legal liability in some cases on the part of the minor child. Thus, liability may attach to a parent even though the child is incapable of legal liability.
The French Code Civil and the Louisiana Civil Code are thus dissimilar in their treatment of paternal responsibility for damage caused by minor children. These differences began with the adoption of the original codes in each jurisdiction and persists in the present provisions of the two codes. In France, an act of a minor child which causes damage raises a rebuttable presumption that the parent was negligent or imprudent in the "garde"[4] or care of the child. 2 M. Planiol, Treatise on the Civil Law 507-08, 510, Nos. 909, 910B (L. S.L.I. transl. 1939). The parents' liability is thus modified to the extent that the "* * * father and mother * * * can prove that they were not able to pervent the act which gives rise to such responsibility." Code Civil art. 1384 (1804). When Code Civil art. 1384 was considered for adoption, it was said that the impossibility of the parent to prevent the act was the equivalent of a "force majeure," i. e., a fortuitous event. 13 P. Fenet, Recueil Complet des Travaux Preparatoires du Code Civil 476 (1836); 13 Locre, La Legislation Civile, Commerciale et Criminelle de la France 42, No. 13 (1828). Toullier was of the opinion that "[i]n order to be relieved of responsibility, the father * * * has to prove nothing else but that his child was of too tender an age to act with discernment." 11 C. Toullier, Le Droit Civil FrancoisSuivant I'ordre du Code, No. 270 (1832), cited in Johnson v. Butterworth, 180 La. 586, 602, 606, 157 So. 121, 126, 127 (1934). Laurent, Marcade, and other French doctrinal writers, however, were of the opinion that since the responsibility imposed by French law depended upon the fault or negligence of the parents, the age of the children or their ability to discern were immaterial and irrelevant.[5]
Louisiana Civil Code art. 2318 is contrary to the French concept of a rebuttable presumption; in the former, the language is clear and unambiguous that it was the legislative intent to impose a sort of strict liability upon parents as a responsibility flowing from paternal authority. That liability is considerably stronger than the presumption at French law as it does not permit parents to escape responsibility by showing an absence of negligence on their part with regard to the "garde" or care of minor children. However, the Louisiana and French concepts coincide in *274 holding that nondiscerning persons do not possess the capability of knowing the consequences of their conduct; they lack the moral guilt usually associated with delictual responsibility and, therefore, they should not be legally liable for acts under an objective standard designed for normal reasoning persons.[6] Nevertheless, an innocent victim should not be denied reparation if there exists a source of financial responsibility; therefore, the parent of an infant of tender years and the curator of an insane person, who are charged with the legal "garde" or care of these persons who cannot care for themselves, should be required to respond for the acts of those within their "garde" because of their legal relation to and legal responsibility for these nondiscerning persons.
The leading case on this issue is Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934). The holding in this case, which has been much relied upon in subsequent jurisprudence, is that a parent is not responsible for the damage caused by a minor of tender years who lacks the capacity for discernment. The writer of that opinion appears to reason that the original source of Article 2318 was the French Code article 1384. 180 La. at 592, 157 So. at 123. He then rationalizes that even if there were pertinent differences between the French and the Louisiana provisions, they "* * * resulted merely from the arranging of the several paragraphs of article 1384 of the French Code into separate articles in the Louisiana Code [of 1825]; and it is possible that this result, although of some effect, was accidental, as we shall proceed to explain." In the several pages following the writer discusses his belief that the omission from the 1825 Code of the exemption from paternal liability for those delicts of their minor children which the parents could not have prevented was accidental. We are of the opinion that the direct and original source of Article 2318 of our Code is the Projet du Gouvernement.[7] We are also of the opinion that the change in exemptions from liability of different parties in the 1825 Code was a result of specific legislative intent.
The earliest case in Louisiana interpreting our present provision for paternal delictual responsibility is Mullins v. Blaise, 37 La.Ann. 92 (1885).[8] In that case the court said that a six-year-old boy's act of pointing a blazing roman candle in the direction of other children and injuring one of them:
"* * * was a fault of the most culpable character. It is true that by reason of the tender years and lack of discernment of the minor, this fault may not be, in a legal sense, imputable to him. But the exploded vagary of Toullier that this is a reason for exempting the father from liability can find no recognition at our hands. The law itself imputes the fault to the father. It presumes that it resulted from lack of sufficient care, watchfulness and discipline on his part, in the exercise of the paternal authority. This is the very reason and foundation of the rule."
The opinion further stated that for a similar reason. the law imposes similar responsibility upon the owner for damage occasioned by his animals which certainly have no greater power of discernment than an infant of tender years.[9]
*275 Johnson v. Butterworth, supra, relies heavily upon Toullier[10] and quotes extensively from his works dealing with the French jurisprudence before the Code Napoléon and the intended change in Article 1384. The Johnson v. Butterworth case does quote 5 Marcade at 287, as follows:
"The responsibility of which it [article 1384] treats exists, whatever Toullier has said of it (XI, 260, 270), without the necessity of distinguishing whether the act which has caused the damage is or is not imputable to its author. Thus, when the father, instead of watching over his child of six or seven years, and guarding him under his eyes, allows him to run in the fields, and this child goes off with other children of his age and ravages crops or commits other devastations, it is very true that there is no fault and consequently no offense or quasi-offense on the part of the child, who did not have the understanding of what he was doing, but it is obviously the father's fault that the damage has occurred. And consequently it is a quasi-offense on his part."
Pothier says:
"It results from the definition we have given of delicts and quasi-delicts that only those persons who have the use of reason are capable of committing delicts and quasi-delicts; there are as well those who are not reasoning persons, among whom are infants and insane persons, who are not capable of imprudence or malignant actions.
"That is why if an infant or an insane person does something which causes a tort to someone, it does not result in any personal obligation to that infant or insane person; thus the act is not a delict or a quasi-delict since it is not yielded from an imprudent or malignant act for the reason that these sorts of persons are not capable of such acts."[11]
Pothier also makes a distinction between the insane person and the person merely interdicted because of his "prodigalite" (prodigality or lavishness), writing that the latter may be held liable for his delicts.[12]
In 1825, Louisiana made substantial changes in the liability for damage caused by the acts of persons for whom one is answerable or for things which one has in his custody; it is most obvious that this was done with the specific intent to realign and reassess delictual liability in this area. For example, when we adopted Civil Code Article 2318, we not only omitted the exculpating clause for parents who could not have prevented the "delinquency," but we also amended the article to make parents responsible for "the damage" occasioned by their children instead of "the delinquency" of their children. Moreover, for the first time, we introduced a new class of persons responsible for those in their custody. The article immediately following paternal liability, Article 2319, reads:
"The curators of insane persons are answerable for the damage occasioned by those under their care."[13]
Our redactors apparently adopted the distinction made by Pothier between the interdicted "insane" person and the person interdicted for other reasons. It is only the curator of the insane person to whom we have attached delictual liability. The legislature of 1825 was obviously aware that there should be a distinction in attaching responsibility for delictual acts between those who were capable of discernment and those who were not. It also seems readily apparent that those legislators did not intend persons incapable of *276 discernment to be liable for their delicts. As it was said in Mullins v. Blaise 37 La. Ann. at 93: "* * * this fault may not be, in a legal sense imputable to him [one incapable of discernment]." Nevertheless, the legislature very wisely chose to cast someone in damages for the delictual harms visited upon others by the nondiscerning. For the insane person, the law automatically imputes the fault to the curator. For the child too young to reason or have intellectual discernment, "* * * [t]he law itself imputes the fault to the father."[14]
In the recent case of Holland v. Buckley, 305 So.2d 113 (La.1974), this Court reappraised the liability of the owner of an animal for damages caused by the animal. That case contains an excellent discussion of French authorities interpreting Article 1385 of the French Civil Code, which is comparable to our Civil Code Article 2321. This Court there found that our Article 2321 is a verbatim reenactment of the equivalent article of the Projet du Gouvernement (1800). We held, in respect to the liability of the master for the harm caused by his animal, that the master is presumed to be at fault, that the fault is in the nature of strict `liability, and that the owner may exculpate himself from this presumed fault only by showing that the harm was caused by the fault of the victim, the fault of a third person, or by a fortuitous event. We rejected the concept that the owner of an animal could absolve himself of fault "by showing that he himself did not contribute to the accident by some lack of care on his part."
Thus, in Holland v. Buckley we overruled jurisprudence which, according to Johnson v. Butterworth, supra, had held the owner of an animal answerable for the damage he has caused "* * * only when the act of the animal that caused the damage is attributable to some fault or imprudence on the part of the owner of the animal" Johnson v. Butterworth analogized the responsibility of an owner of an animal to the responsibility of parents for their children. That analogy is no longer applicable. A preferable analogy is to the responsibility of the curator who has the care of an insane person. La.Civil Code art. 2319.
We are of the opinion that Johnson v. Butterworth and other jurisprudence relieving parents from liability for the delicts of infant children who lack discernment are erroneous in their conclusions. We specifically overrule such holdings.[15] In *277 so doing, we reinstate the holding in Mullins v. Blaise, 37 La.Ann. 92 (1885) and the reasoning therein. Thus, our holding in the case before us merely constitutes a return to earlier jurisprudence which we now consider to have been correct in its interpretation of the Code. This opinion in no way affects the long line of jurisprudence which holds that certain minor children are incapable of contributory negligence. We do not here set the standard of care to which a victim is subject with regard to such a nondiscerning person. Our holding in this case is limited to a situation such as the one before us where the victim is unwarned and unsuspecting of any impending harm from the acts of a child.
We conclude that although a child of tender years may be incapable of committing a legal delict because of his lack of capacity to discern the consequences of his act, nevertheless, if the act of a child would be delictual except for this disability, the parent with whom he resides is legally at fault and, therefore, liable for the damage occasioned by the child's act. This legal fault is determined without regard to whether the parent could or could not have prevented the act of the child, i. e., without regard to the parent's negligence. It is legally imposed strict liability. This liability may be escaped when a parent shows the harm was caused by the fault of the victim, by the fault of a third person, or by a fortuitous event.
Having made the threshold determination that a father is responsible for the delicts of his minor child whether or not the child is of sufficient age to be capable of discerning the consequences of his acts, we need not determine whether this particular child, Gregory Bucher, was possessed of the requisite age and capacity to know the consequences of his act. Such an inquiry would be irrelevant and immaterial in answering the issue before us. The fact that the conduct was tortious when measured by normal standards is enough to render the father liable therefor.
Thus, we decide in this case that the father is responsible for damages to the plaintiff for the harm occasioned by the act of his child, Gregory Bucher, under Louisiana Civil Code Article 2318. Zurich Insurance Company, as insurer of the father is, of course, also liable. Since the court of appeal has not yet reviewed the case for damages, we, in keeping with our usual practice, remand the case to that court for the assessment of damages.
For the reasons assigned, judgment is rendered in favor of plaintiffs, Laura Wallace Turner and August Turner, against the defendants, Francis Bucher and Zurich Insurance Company, for such amounts as may hereinafter be assessed by the court of appeal. All costs of court are assessed against the defendants.
It is further ordered, adjudged and decreed that the case be remanded to the court of appeal for the assessment of damages.
Reversed and remanded.
SANDERS, C. J., dissents with written reasons.
MARCUS, J., dissents and assigns reasons.
SUMMERS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
Recently, in Holland v. Buckley, La., 305 So.2d 113 (1974), overruling long-established jurisprudence interpreting our code articles, the majority held that owners are strictly liable for the damage caused by domestic animals. Today, further expanding the scope of strict liability, the majority holds that parents are strictly liable for damage caused by their young children below the age of discernment. The holding creates a new no-fault liability. Under our law, parents have always been liable for *278 damage caused by the fault of their minor children.
In so holding, the majority overrules a long line of decisions, which have carefully reviewed every aspect of our code articles. See, e.g., Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968); Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934); Toca v. Rojas, 152 La. 317, 93 So. 108 (1922); Lumbermens Mut. Cas. Co. v. Quincy Mut. Fire Ins. Co., La.App., 220 So.2d 104 (1969); Frank v. Great American Insurance Company, La.App., 196 So.2d 50 (1967); Boutte v. American Motorists Insurance Company, La.App., 176 So.2d 833 (1965); Fabre v. Lumbermens Mutual Casualty Company, La.App., 167 So.2d 448 (1964); Scottish Union and National Insurance Company v. Prange, La.App., 154 So.2d 623 (1963); Brown v. Liberty Mutual Insurance Co., La.App., 96 So.2d 922 (1957); Honeycutt v. Carver, La.App., 25 So.2d 99 (1946); Phillips v. D'Amico, La.App., 21 So.2d 748 (1945); Gott v. Scott, La.App., 199 So. 460 (1940); Horn v. American Employers' Insurance Company, 386 F.2d 360 (5th Cir. 1967).
The majority opinion throws no new light on the Louisiana Civil Code articles. The variance between our articles and those of the Code Napoleon was noted long ago and carefully considered in the decisions. Nonetheless, the majority declines to give effect to the explicit language of Article 237, which reads:
"Fathers and mothers are answerable for the offenses or quasi-offenses committed by their children, in the cases prescribed under the title: Of Quasi-Contracts, and of Offenses and Quasi-Offenses."

The article clearly limits the vicarious liability of parents to "the offenses and quasi-offenses committed by their children". Article 2318, though phrased in general terms, is not Inconsistent. Rather, the two articles must be construed together. LSA-C.C. Art. 17. Together, they mean that there is no parental liability without fault on the part of the child. Thus, if damage is caused by a minor child of the age of discernment, but without fault, the parent has no liability. Likewise, if damage is caused by a child too young for fault, the parent is not liable. These principles, in my opinion, are sound.
In Toca v. Rojas, supra, a fishhook held by defendant's fourteen-year-old son struck another youth in his eye. This Court found the evidence insufficient to establish that defendant's son was negligent, or at fault. In holding that the father was not liable, the Court stated:
"... While the law imputes the fault of the minor to the father, there must of necessity be some fault, actual or legal, in the act of the minor which caused the damage, before the father can be held liable in damages. Fathers and mothers are only made answerable for the offenses and quasi offenses committed by their children (C.C. 237), from which it follows that, if the act of the minor which caused the damage did not in law constitute an offense or quasi offense, there can be no paternal responsibility."
In Johnson v. Butterworth, supra, a landmark decision making a thorough analysis of the history and meaning of the articles, this Court absolved the father of liability for the damage occasioned when his three-year-old child bit her nurse's arm. The Court held that parents are liable only for the damage of their minor children arising from offenses and quasi-offenses. Thus, parents are not liable for the damage caused by children too young to possess the reasoning power and discernment for fault.
There, this Court stated:
"In France, as we have said, the parental authority itself makes the parent responsible for a tort committed by his minor child, unless the parent proves that he was unable to prevent the act that caused the damage. Because of *279 that limitation on the responsibility of the parent for an injury done by his minor child, the age of the child is a matter of no importance in such a case. But, in Louisiana, the parent is responsible for a tort committed by his minor child, even though the parent could not have prevented the act that caused the injury. Because of that unqualified responsibility of the parent for a tort committed by his minor child, in Louisiana, the liability of the parent for an injury willfully inflicted by his minor child depends upon whether the child is old enough to be legally capable of committing a tort."
In Gott v. Scott, supra, the Court formulated the principle of parental liability as follows:
"Articles 2318 and 237 of the Revised Civil Code must be read together and when that is done, it is made plain that the father is only liable for the damages caused by the offenses or quasi offenses of his minor daughter living with him."
While relying upon French authorities, the majority announces a rule of liability for Louisiana parents far more stringent than that prevailing in France. There the parents have no liability if they prove that they could not prevent the act from which liability arises. French Civil Code Art. 1384; Johnson v. Butterworth, supra. The rule of liability is also more stringent than that prevailing in other states. In the common law, the parents had no vicarious liability even for the torts of a child. The child alone was responsible. A number of states have enacted statutes imposing vicarious liability on parents. Most, if not all, of the statutes restrict liability to a child's intentional torts. They also fix a pecuniary limit on liability. Prosser, Law of Torts, (4th ed. 1971) § 123, p. 871; 55 Mich.L.Rev. 1205-1208.
Quite clearly, Louisiana's present rule ranks among the most liberal in the world for injured claimants. Parents are vicariously liable for the fault of their children in the full amount of the damage. Parents, of course, are individually liable for their own fault. I find no justification for extending parental liability or converting it into liability without fault.
Since I reject the rationale of the majority opinion, I express no opinion as to whether the six-year-old boy in the present case was capable of fault in the operation of his bicycle.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
I am unable to subscribe to the views expressed in the majority opinion. Rather, I agree with the holding in Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934) and its progeny. Accordingly, I respectfully dissent.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Chief Justice.
NOTES
[1] The original French in Article 2297 of our Civil Code of 1825, which became Article 2318 in the 1870 Civil Code, did not contain the French word "ou," which is translated "or," but rather "et," which is translated "and." Art. 2318, La.C.C. Comp.Ed., in 17 West's LSA-C.C. 17-18 (Dainow ed. 1973).
[2] The "or" is not part of the original French in the Civil Code of 1825, Art. 2297. The original French would translate better if the comma as well as the "or" were omitted. Id.
[3] In this opinion, when "Code Civil" is used in reference to the Code Napoléon of 1804, it is followed by the date, i.e., (1804). In all other instances it refers to the Code Civil presently in effect in France.
[4] The word "garde," as used in this opinion, is the French word for safekeeping, care, protection, custody, charge, watch, heed, attention. See Cassell's French-English, English-French Dictionary 365 (Baker ed. 1951).

This word is used in lieu of the English "guard" because the French "garde" better connotes the meaning of protecting others from potential harm by the child as well as protecting the child from harm.
[5] 20 F. Laurent, Principes de Droit Civil Francais 594 (1869-78); 5 V. Marcade, Revue Critique de Legislation et de Jurisprudence 287 (1854) [hereinafter cited as Marcade].
[6] 6. 2 M. Planiol, Treatise on the Civil Law 490-491, Nos. 879, 880 (L.S.L.I. transl. 1939).
[7] Paragraph 2, Art. 20, Title III, Book III (1800).
[8] In an earlier case, Marionneaux v. Brugier, 35 La.Ann. 13 (1883) a thirteen-year-old child accidentally shot a nine-year-old child and contributory negligence was pleaded. The court actually found, as a matter of fact, that the act of the nine-year-old did not constitute contributory negligence, and did not discuss the legal aspects of contributory negligence for children.
[9] The opinion cites 5 Marcade at 270, and 2 F. Mourlon, Répétitions Ecrites sur le Code Civil 888 (11 éd. 1878-81).
[10] See text at 273, supra.
[11] 1 Oeuvres de Pothier 63, No. 118 (Dupin e d. 1835).
[12] Id. at 63, No. 120.
[13] This is the only article concerning either curators or interdicts which is limited to the "insane" alone.
[14] We are not called upon to decide in this case whether a nondiscerning minor child may also be liable for his delicts. However, it must be very apparent from our discussion of the liability of the father that it almost necessarily will follow that a nondiscerning minor child will not have delictual liability since our language has indicated that a nondiscerning minor is incapable of being legally at fault.

We are mindful of the several articles in the Code which provide that minors are responsible for their offenses and quasi-offenses.
Article 1785 provides:
* * *
"The obligation arising from an offense or a quasi offense, is also binding on the minor."
Article 1874 states:
"He [a minor] is not relievable against obligations resulting from offenses or quasi offenses."
Article 2227 states:
"He is not restituable against the obligations resulting from his offenses or quasi offenses."
We believe that our jurisprudence, the French jurisprudence and the French doctrine are all correct in finding that those minors incapable of discernment are immune from legal liability for delicts arising from negligence. Any basis in this opinion for concluding that there is no liability on the part of the minor for his offenses or his quasi-offenses is limited to the minor of tender age who is so incapable of discernment as to also be incapable of being legally at fault.
[15] Authority for overruling a line of jurisprudence can be found in Holland v. Buckley, 305 So.2d 113 (La.1974) and the citations therein. In Miami Corporation v. State, 186 La. 784, 173 So. 315, 320 (1936), we stated:

"* * * In Louisiana, this court has never hesitated to overrule a line of decisions * * * when greater harm would result from perpetuating the error rather than from correcting."